# I. **PRELIMINARY STATEMENT**

Defendant Brookhaven Science Associates, LLC ("BSA"), which was incorrectly named in the Complaint as Brookhaven National Laboratory ("BNL"), respectfully submits this memorandum of law in support of its Fed. R. Civ. P. 12(c) motion for partial judgment on the pleadings and Fed. R. Civ. P. 26(c) motion to stay discovery as to all of the claims it seeks to dismiss pending a resolution of the Rule 12(c) motion.

As demonstrated below, the Court should dismiss the various claims in plaintiffs Brenda Thomas ("Thomas") and Patrice Benjamin's ("Benjamin's") Complaint on the following grounds:

- all of Thomas' race discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII") in the First and Third Claims for Relief should be dismissed because she failed to file this lawsuit within 90 days after receiving her notice of right to sue from the U.S. Equal Employment Opportunity Commission ("EEOC");

- all of Benjamin's Title VII race discrimination and retaliation claims in the First and Third Claims for Relief that pre-date December 21, 2002 should be dismissed because such claims arose more than 300 days before he filed his EEOC charge, and thus are time-barred;

- Benjamin's disability discrimination claims under the Americans with Disabilities Act of 1990 ("ADA") in the Fifth Claim for Relief should be dismissed because he failed to include such claims in his EEOC charge, and thus the Court lacks jurisdiction over those claims;

- all of the plaintiffs' claims under the New York State Human Rights Law ("HRL") in the Second, Fourth and Sixth Claims for Relief should be dismissed because those claims are barred by the federal enclave doctrine and Article I, Section 8, clause 17 of the U.S. Constitution; and

- the plaintiffs' claims under the First and Fourteenth Amendments to the U.S. Constitution and under 42 U.S.C. § 1983 in the Seventh Claim for Relief should be dismissed because BSA is not a "state actor," and no such state action is alleged in the Complaint.

For each of these reasons, the Court should grant BSA's Rule 12(c) motion. In addition, given the well-settled case law supporting BSA's motion, as well as the burden and expense

associated with discovery as to claims that have no merit, the Court should exercise its broad discretion and stay discovery as to all of the claims that BSA seeks to dismiss pending resolution of the Rule 12(c) motion.

## II. BACKGROUND FACTS

The following is a summary of the facts – which are based on the pleadings and exhibits thereto – that relate to BSA's motion:

### A. BNL IS A FEDERAL ENCLAVE

By Deed of Cession, dated July 17, 1933, the United States government obtained the BNL site in Upton, New York, from the State of New York and created a federal enclave. (Answer, ¶ 6 & Ex. A.) While the federal government owns the BNL site, BSA, a private not-for-profit limited liability company, has operated BNL since March 1, 1998, under a contract that BSA has with the U.S. Department of Energy ("DOE"), which is the federal agency that oversees the BNL site. (Id., ¶ 6.)

### B. PLAINTIFF PATRICE BENJAMIN

Benjamin is an African American male who commenced his employment with BSA's predecessor in August 1987. (Compl., ¶¶ 5, 8.) He was a Technical Specialist in the Radio Frequency Group from 1987 through 1996. (Id., ¶ 12.) In 1996, he was transferred to the Pulsed Power Group. (Id., ¶ 17.) In or about 1998, Benjamin was promoted to senior technical specialist. (Id.)

Benjamin continued to be employed in that capacity until his group was on the verge of being disbanded and it was necessary to transfer him to another work group in October 2003. (See Compl., ¶ 36.) But, rather than accept such transfer, Benjamin opted to participate in

BSA's voluntary reduction-in-force program – for which he received a severance package – and voluntarily resigned from his employment on October 31, 2003.  (Answer, ¶ 36.)

On October 17, 2003, Benjamin filed his EEOC charge against BSA, claiming that he had been discriminated against based on his race and retaliated against based on his activities as a member of the Brookhaven Advocacy Council ("BAC").  (Compl., ¶ 7; Answer, ¶ 7 & Ex. B.)  He did not allege "disability" discrimination in his EEOC charge.  (See Answer, Ex. B.)  On May 10, 2004, the EEOC issued a Dismissal and Notice of Rights to Benjamin, stating that it was unable to conclude that BSA violated the anti-discrimination statutes.  (Answer, ¶ 7.)  Benjamin subsequently filed the Complaint with this Court on August 5, 2004.

## C. **PLAINTIFF BRENDA THOMAS**

Thomas is an African American female who commenced her employment with BSA's predecessor on November 9, 1987.  (Compl, ¶ 5A; Answer, ¶ 10.)  She resigned from her employment in May 2003.  (Compl, ¶ 10; Answer, ¶ 10.)

Like Benjamin, Thomas alleges in the Complaint that BSA discriminated against her because of her race and retaliated against her because of her activities in connection with the BAC.  (Compl, ¶¶ 53, 37.)  In March 2003, Thomas filed her EEOC charge against BSA, claiming race discrimination and retaliation.  On April 12, 2004, the EEOC issued Thomas a Dismissal and Notice of Rights, stating that it was unable to conclude that BSA violated the anti-discrimination statutes.  (Answer, Ex. C.)  Together with Benjamin, Thomas filed this lawsuit on August 5, 2004, more than 90 days after her receipt of her EEOC right to sue notice.

**D.   THE COMPLAINT**

In their Complaint, the plaintiffs assert the following claims against BSA:

- both plaintiffs allege race discrimination in violation of Title VII and the HRL, (Compl., First and Second Claims for Relief, p.9-10);

- both plaintiffs allege retaliation in violation of Title VII and the HRL, (Compl., Third and Fourth Claims for Relief, p.10-11);

- Benjamin alleges disability discrimination in violation of the ADA and HRL, (Compl., Fifth and Sixth Claims for Relief, p.11-12); and

- both plaintiffs allege violations of the First and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983, (Compl., Seventh Claim for Relief, p.12-13).

## III.   ARGUMENT

**A.   THE APPLICABLE FED. R. CIV. P. 12(c) STANDARD**

The standard for ruling on a Fed. R. Civ. P. 12(c) motion is virtually identical to the standard under Fed. R. Civ. P. 12(b)(6). George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp., 554 F.2d 551, 553 (2d Cir. 1977). Thus, in considering this motion for judgment on the pleadings, the Court is required to accept as true all of the well-pleaded facts alleged in the Complaint. Id. The Court should dismiss the Complaint if it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claims which would entitled them to relief. Id.

In determining the sufficiency of the plaintiffs' claims, the Court may consider documents attached to, or incorporated by reference in, the pleadings; matters for which judicial notice may be taken; or documents either in plaintiffs' possession or of which they had knowledge and on which they relied in bringing suit. Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991), cert. denied, 503 U.S. 960 (1992); Madonna v. United States, 878 F.2d 62, 64-65 (2d Cir.

1989); Miles v. The Florsheim Shoe Store Co., 73 Fair Empl. Prac. Case (BNA) 119, 122-23 (S.D.N.Y. 1997) (reviewing plaintiff's EEOC charge in granting Rule 12(c) motion dismissing his time-barred Title VII claims). Thus, the Court may consider the documents attached to the Answer in deciding this motion. Applying this standard, it is clear that BSA's Rule 12(c) motion should be granted in its entirety.

**B.   THOMAS' TITLE VII CLAIMS SHOULD BE DISMISSED BECAUSE SHE FAILED TO COMMENCE THIS ACTION WITHIN 90 DAYS OF HER RECEIPT OF THE RIGHT TO SUE NOTICE**

The record that is properly before the Court shows that Thomas failed to file this lawsuit within 90 days after her receipt of the EEOC's notice of right to sue. Therefore, the Court should dismiss all of Thomas' Title VII claims in the First and Third Claims for Relief.

"To be timely, a claim under Title VII . . . must be filed within 90 days of the claimant's receipt of a right to sue letter." Rasmussen v. Sigma Corp. of Am., 27 F. Supp. 2d 388, 393 (E.D.N.Y. 1998) (this Court dismissed untimely-filed Title VII and ADEA claims); Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 149 (1984) (*per curiam*) ("The section of Title VII at issue here states that within 90 days after the issuance of a right-to-sue letter 'a civil action may be brought against the respondent named in the charge.'") (citation omitted), reh'g denied, 467 U.S. 1231 (1984); Sherlock v. Montefiore Med. Ctr., 84 F.3d 522, 525 (2d Cir. 1996). This Court has made clear that, "once the 90 days have passed after receipt of the letter, a plaintiff may no longer bring suit." Rasmussen, 27 F. Supp. 2d at 392; Moscowitz v. Brown, 850 F. Supp. 1185, 1191 (S.D.N.Y. 1994) (dismissing *pro se* action filed 911 days after notice). The plaintiff bears the burden of proving that she timely filed her Title VII claims. Williams v. Miracle Plywood Corp., 1990 WL 26310, at *3-4 (S.D.N.Y. Mar. 9, 1990); Bergman v. Sprint/United Mgmt. Co., 981 F. Supp. 1399, 1402 (D. Kan. 1997) ("'When the defendant

5

denies or contests timely filing, the plaintiff must prove this condition precedent.'") (citation omitted).

When the EEOC mails a right to sue notice to the plaintiff's residence, it is presumed under Fed. R. Civ. P. 6(e) that the 90-day limitations period begins to run three days after the EEOC mailed it. Baldwin County, 466 U.S. at 148 n.1; Sherlock 84 F.3d at 525-26; Smith v. Local Union 28 Sheet Metal Workers, 877 F. Supp. 165, 172 (S.D.N.Y. 1995) (relying on Fed. R. Civ. P. 6(e), court dismissed *pro se* plaintiff' Title VII claim because it was filed 95 days after the date on which he should have received right to sue notice), aff'd, 100 F.3d 943 (2d Cir.) (table), cert. denied, 519 U.S. 832 (1996). A plaintiff can rebut Fed. R. Civ. P. 6(e)'s three-day presumption *only if* she "presents sworn testimony or other admissible evidence from which it could reasonably be inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to reach [her] by mail. . . ." Sherlock, 84 F.3d at 526 (emphasis added). This Thomas has not done. (See Compl., ¶ 7.)

This 90-day time period requirement should be strictly enforced and "the court cannot extend it by even one day." Rasmussen, 27 F. Supp. 2d at 393 (quoting Johnson v. Al Tech Specialties, 731 F.2d 143, 146 (2d Cir. 1984)); Holmes v. NBC/GE, 914 F. Supp. 1040, 1042 (S.D.N.Y. 1996) (same), aff'd, 133 F.3d 907 (2d Cir. 1997) (table). "'If the rule were otherwise, a plaintiff could be permitted to 'enjoy a manipulable, open-ended time extension which could render the statutory limitation meaningless. . . .'" Rasmussen, 27 F. Supp. 2d at 393 (citation omitted). Indeed, the Supreme Court has emphasized the need to adhere strictly to these procedural requirements:

> Procedural requirements established by Congress for gaining
> access to the federal courts are not to be disregarded by courts out
> of a vague sympathy for particular litigants. As we stated in
> Mohasco Corp. v. Silver, 447 U.S. 807, 826 (1980), '[i]n the long

6

> run, experience teaches that strict adherence to the procedural
> requirements specified by the legislature is the best guarantee of
> evenhanded administration of the law.'

Baldwin County, 466 U.S. at 152.

Nowhere in the Complaint does Thomas even allege that the EEOC issued her a right to sue notice, let alone that she timely filed her Title VII claims with the Court. Instead, only Benjamin alleges that he received a right to sue notice and timely filed suit. (Compl., ¶ 7.) Thomas' notice of right to sue shows that the EEOC mailed it to her residence on April 12, 2004. (Answer, Ex. C.) Utilizing the three-day presumption of receipt rule under Sherlock and Fed. R. Civ. P. 6(e), Thomas is deemed to have received the notice no later than April 15, 2004. Thomas, however, did not file this case until August 5, 2004 – 112 days after her receipt of the right to sue notice. Because Thomas filed her Complaint more than 90 days after her receipt of the right to sue notice, she has given the Court no choice but to dismiss as time-barred all of her Title VII claims in the First and Third Claims for Relief.

**C.      BENJAMIN'S TITLE VII CLAIMS THAT PRE-DATE
         DECEMBER 21, 2002 ARE TIME-BARRED**

Benjamin filed his EEOC charge on October 17, 2003. Therefore, all of his Title VII claims that pre-date December 21, 2002 – *i.e.*, 300 days before he filed his EEOC charge – are time-barred and should be dismissed.

Under Title VII, a plaintiff must file his EEOC charge within 300 days after his claims accrued. Quinn v. Green Tree Credit Corp., 159 F.3d 759, 763 (2d Cir. 1998); Butts v. City of New York Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993) (affirming dismissal of two promotion claims as time-barred); 42 U.S.C. § 2000e-5(e)(1). "This [300-day] requirement functions as a statute of limitations, . . . in that discriminatory incidents not timely charged before the EEOC will be time-barred upon the plaintiff's suit in district court." Quinn,

7

159 F.3d at 763.  Furthermore, the Supreme Court recently held that "discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 112 (2002).  Thus, "[p]romotions [or other alleged discrete discriminatory acts] which occcured more than 300 days before [Benjamin] filed [his] administrative charge with the EEOC" are time-barred and should be dismissed. Samuel v. Merrill Lynch Pierce Fenner & Smith, 771 F. Supp. 47, 48 (S.D.N.Y. 1991) (dismissing four of six promotion claims as untimely); Bawa v. Brookhaven Nat'l Lab., Associated Univ. Inc., 968 F. Supp. 865, 868 (E.D.N.Y. 1997) (dismissing plaintiff's Title VII claims that pre-dated 300 days before the filing of his EEOC charge), aff'd, 1999 U.S. App. LEXIS 34074 (2d. Cir. 1999) (table); Butts, 990 F.2d at 1401.

Benjamin filed his EEOC charge on October 17, 2003.  (Compl., ¶ 7; Answer, Ex. B.) Therefore, any alleged conduct that took place before December 21, 2002 (*i.e.* 300 days before October 17, 2003) is time-barred and cannot form the basis for any of Benjamin's Title VII claims in this case.  For instance, Benjamin alleges discrete and unrelated incidents of discriminatory denial of transfer or promotion since at least 1996. (Compl., ¶ 13.)  Therefore, any claims relating to conduct that allegedly occurred before December 21, 2002, including, but not limited to, his denial of promotion and transfer claims, are time-barred and should be dismissed.

**D.     BENJAMIN'S ADA CLAIMS SHOULD BE DISMISSED BECAUSE HE FAILED TO INCLUDE THOSE CLAIMS IN HIS EEOC CHARGE**

In the Fifth Claim for Relief, Benjamin alleges that BSA discriminated against and "constructively terminated" him because of his purported disability, in violation of the ADA. (Compl., ¶ 76.)  The Court, however, lacks jurisdiction over these claims because Benjamin failed to include them in his EEOC charge; thus, the Court should dismiss these claims.

8

The filing of a charge with the EEOC is a jurisdictional prerequisite to a private civil action under the ADA. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 798 (1973); Budde v. United Refining Co. of Pa., 2004 U.S. Dist. LEXIS 13722, at *4 (W.D.N.Y. July 2, 2004). "This exhaustion requirement is an essential element of [the] statutory scheme." Butts, 990 F.2d at 1401. Indeed, "[t]he purpose of the notice provision, which is to encourage settlement of discrimination disputes through conciliation and voluntary compliance, would be defeated if a complainant could litigate a claim not previously presented to and investigated by the EEOC." Id. (citation omitted).

In light of this strict exhaustion requirement, courts routinely have held that they lack jurisdiction over ADA claims that were not included in the plaintiff's EEOC charge. E.g., Budde, 2004 U.S. Dist. LEXIS 13722, at *5-7 (court dismissed ADA claim where "plaintiff did not check 'disability' as a basis of defendant's discrimination" on the EEOC form); Joseph v. Am. Works, Inc., 2002 U.S. Dist. LEXIS 9075, at *15-16 (S.D.N.Y. May 21, 2002) (where plaintiff failed to check the box marked "other," in the absence of box marked "disability," on EEOC form, court held that description of "disriminatory treatment occasionally involv[ing] differential handling of employee's doctor's apointments could not have been expected to alert the EEOC to a disability claim"); Tavarez v. Chemical Bank, 1998 U.S. Dist. LEXIS 9249, at *7-9 (S.D.N.Y. June 24, 1998) (court dismissed plaintiff's ADA claims because his EEOC charge stated that he was discharged because of his national origin, and disability discrimination is not reasonably related to such claim even though he stated in charge that he took medical leave before being fired); see also Muse v. New York City Dep't of Hous. Pres. & Dev., 2000 U.S. Dist. LEXIS 12207, at *13-14 (E.D.N.Y. Aug. 22, 2000) (court refused to entertain ADA claim even though plaintiff checked off box indicating disability discrimination, because he

9

failed to allege any facts of such discrimination, concluding that alleged disability discrimination was not reasonably related to asserted claims of race and national origin discrimination). Indeed, strict adherence to administrative exhaustion is even more compelling where, as here, the "'claims are alleging discrimination on a completely different theory or basis from those stated in the EEOC charge'" Burgos v. Sullivan & Cromwell, 2001 U.S. Dist. LEXIS 8412, at *16 (S.D.N.Y. June 25, 2001) (quoting McLean-Nur v. Dep't of Transp., 2000 U.S. Dist. LEXIS 3495, at *13 (S.D.N.Y. Mar. 21, 2000)).

Here, the Court should conclude that it lacks jursidiction over Benjamin's ADA claims. Like the plaintiff in Tavarez, Benjamin explicitly stated in his EEOC charge that "[he was] being subjected to *discrimination* and *retaliation* based on [his] *race*." (Answer, Ex. B, ¶ 15 (emphasis added).) Nowhere in his EEOC charge did he assert a disability discrimination claim. In fact, the section of Benjamin's EEOC charge for "Cause of Discrimination Based On" only shows markings in the boxes for "race" and "retaliation." (Answer, Ex. B.) Tellingly, the box for "disability" is left blank. (Id.) Under these circumstances, it is clear that Benjamin failed to exhaust his administrative remedies as required by the ADA; therefore, the Court should dismiss his ADA claim in the Fifth Claim for Relief.

### E. THE PLAINTIFFS' HRL CLAIMS ARE BARRED BY THE FEDERAL ENCLAVE DOCTRINE AND CONSTITUTION

In the Second, Fourth and Sixth Claims for Relief in the Complaint, plaintiffs assert HRL claims against BSA. The Court, however, should dismiss those state law claims as barred by the federal enclave doctrine and Article I, Section 8, clause 17 of the U.S. Constitution.

The federal enclave doctrine arises under Article I, Section 8, clause 17 of the Constitution, which provides that:

> Congress shall have power…to exercise exclusive Legislation in all Cases whatsoever over such District[s]…as may, by Cession of particular States…become the Seat of the government of the United States, and to exercise like authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for…needful Buildings….

U.S. Const. Art. I, § 8, cl. 17.  The United States acquires *exclusive* jurisdiction over a federal enclave when it "appear[s] that the State, by consent or cession, has transferred to the United States that residuum of jurisdiction which otherwise it would be free to exercise…." Paul v. United States, 371 U.S. 245, 267 (1963) (quoting Silas Mason Co. v. Tax Comm'n, 302 U.S. 186, 197 (1937)).  Factors considered in determining whether a federal enclave exists include: "whether the federal government exercises exclusive, concurrent or proprietarial jurisdiction over the property, when the property became a federal enclave and what the state law was at that time, whether that law is consistent with federal policy and whether it has been altered by national legislation."  Celli v. Shoell, 40 F.3d 324, 328 (10th Cir. 1994) (citations omitted).  Most significantly, "only state law existing at the time of the acquisition remains enforceable, not subsequent laws."  Paul, 371 U.S. at 268.

The U.S. Supreme Court has made clear that "direct state regulation of federal facilities is allowed *only* to the extent that Congress has *clearly* authorized such regulation."  Goodyear Atomic Corp. v. Miller, 486 U.S. 174, 181 (1988) (emphasis added).  "No such statute has been passed to permit state antidiscrimination statutes to be enforced on federal enclaves."  Kelly v. Lockheed Martin Servs. Group, 25 F. Supp. 2d 1, 5 (D.P.R. 1998).

The federal courts that have addressed the applicability of the federal enclave doctrine in the employment law context have held that state anti-discrimination or other employment-related statutes do not apply to private contractors operating on federal enclaves. Hutchinson v. Andrulis Corp., 2004 U.S. Dist. LEXIS 5684, at *1-2 (N.D. Fla. Mar. 31, 2004) (adopting in full

11

magistrate judge's report and recommendation that Florida's whistleblower statute was inapplicable to an employee whose place of employment was located on a federal enclave); Kelly, 25 F. Supp. 2d at 5-6 (refusing to apply Puerto Rico's anti-discrimination statute against private employer on a federal enclave); Osburn v. Morrison Knudsen Corp., 962 F. Supp. 1206, 1209 (E.D. Mo. 1997) (same); Miller v. Wackenhut Servs., 808 F. Supp. 697, 700 (W.D. Mo. 1992) (dismissing plaintiff's claims under Missouri's anti-discrimination statutes because the plant at which plaintiff was employed was located on a federal enclave); Snow v. Bechtel Constr. Inc., 647 F. Supp. 1514, 1520 (C.D. Cal. 1986) (dismissing plaintiff's action because state wrongful termination law did not preexist the federal enclave and was, therefore, inapplicable).

Kelly is instructive in this respect. In that case, the plaintiffs urged the court to find that Puerto Rico's anti-discrimination statute applied to the federal enclave because they were employees of a private corporation merely working on the federal enclave, rather than employees of the federal government itself. Kelly, 25 F. Supp. 2d at 6. The court refused to recognize such a distinction and aptly explained that "it is the fact that a cause of action arises *on* a federal enclave, and not for whom the cause of action arises, that determines that the law of the enclave is applicable." Id. (emphasis added) (citing Goodyear, 486 U.S. at 179-85). Consequently, the court held that the plaintiff's claim under the Puerto Rico anti-discrimination statute was barred by the federal enclave doctrine. Id. at 7. This Court should reach the same result and dismiss the plaintiffs' HRL claims.

Here, the State of New York ceded the BNL site on which BSA operates to the federal government, by Deed of Cession, in 1933. (Answer, ¶ 6 & Ex. A.) This Deed established a federal enclave as described in Article I, Section 8, clause 17 of the U.S. Constitution. The only

12

express exception to the Federal government's complete control and jurisdiction over the BNL enclave is reserved for the service of criminal and civil process by the State of New York. (Answer, Ex. A, at p. 5.)   This was often done when states granted land to the federal government in order to avoid fugitives' use of enclaves as safe havens.  See James v. Dravo Contracting Co., 302 U.S. 134, 146 (1937).  Accordingly, only those New York State laws passed prior to 1933 are enforceable at BNL.  Goodyear, 486 U.S. at 180-81.

The HRL, however, was not enacted until 1945, twelve years *after* cession of BNL to the federal government.  In addition, there is no federal statute permitting state anti-discrimination statutes to be enforced on federal enclaves.  Kelly, 25 F. Supp. 2d at 5.  As Goodyear and the above-cited cases in the employment context make clear, it is of no consequence that BSA is a private contractor operating BNL under a contract with the DOE.  Rather, the determining factor is that the land on which BNL operates is, without question, a federal enclave as defined by the U.S. Constitution.  Accordingly, plaintiffs cannot sue BSA under the HRL and their HRL claims should be dismissed.

F.   **THE PLAINTIFFS' CONSTITUTION AND § 1983 CLAIMS SHOULD BE DISMISSED BECAUSE BSA IS NOT A STATE ACTOR**

In the Seventh Claim for Relief, plaintiffs allege that BSA violated the First and Fourteenth Amendments to the Constitution and 42 U.S.C. § 1983.  (Compl., ¶¶ 83-87.)  The Court, however, should dismiss those claims because BSA is not a state actor, and no such state action is alleged in the Complaint.

"It is axiomatic that the First and Fourteenth Amendments, and § 1983, apply only to state actors."  Leeds v. Meltz, 85 F.3d 51, 54 (2d Cir. 1996).  Thus, courts have uniformly dismissed First and Fourteenth Amendment claims at the pleading stage where, as here, the plaintiffs did not allege that the defendant was, or is, a state actor.  E.g., Rodriguez v. Beechmont

13

Bus Servs., 173 F. Supp. 2d 139, 151 (S.D.N.Y. 2001) (granting motion to dismiss First and Fourteenth Amendment claims because plaintiffs "make no allegation that defendants' purely private actions are properly considered those of the state"). Similarly, § 1983 requires that a plaintiff "allege that he was injured by 'either a state actor or a private party acting under color of state law.'" O'Diah v . New York City, 2003 U.S. Dist. LEXIS 19552, at *5 (S.D.N.Y. Nov. 4, 2003) (quoting Ciambriello v. County of Nassau, 292 F.3d 307, 323 (2d Cir. 2002)).

Courts will not characterize a private entity as a state actor for the purposes of alleged Constitutional and § 1983 violations unless "the state . . . exerted its coercive power over, or provided significant encouragement to, the defendant…." Leeds, 85 F.3d at 54 (citations omitted). "Extensive regulation and public funding [by a federal or state agency], either alone or taken together," is insufficient to transform a private entity into a state actor. Id.

In this case, the Complaint is devoid of any allegation that BSA acted as a state actor or that it is a private entity that is so dominated by the government that it can be deemed a state actor. That is probably because no such facts exist. For this reason, the Court should dismiss the plaintiffs' Constitutional and § 1983 claims in the Seventh Claim for Relief.

### G.   THE COURT SHOULD STAY DISCOVERY AS TO ALL THE CLAIMS THAT BSA SEEKS TO DISMISS

In light of the well-settled caselaw supporting the grounds for BSA's Rule 12(c) motion, and the burden and expense associated with discovery as to the claims that are the subject of the Rule 12(c) motion, BSA respectfully requests that the Court exercise its broad discretion and stay discovery with respect to these claims pending resolution of the Rule 12(c) motion. Fed. R. Civ. P. 26(c); see e.g., Transunion Corp. v. PepsiCo., Inc., 811 F.2d 127, 130 (2d Cir. 1987) (granting motion to stay discovery pending determination on motion to dismiss for forum non conveniens); Temple of Lost Sheep, Inc. v. Abrams, 1990 WL 156139, at *4 (E.D.N.Y. 1990)

(staying discovery pending motion to dismiss), aff'd on other grounds, 930 F.2d 178 (2d Cir. 1991), cert. denied, 502 U.S. 866 (1991).

## IV. CONCLUSION

For the foregoing reasons, the Court should grant BSA's motion for partial judgment on the pleadings and its motion for a partial stay of discovery; grant to BSA its costs and disbursements, including attorneys' fees, relating to this motion; and grant to BSA such other and further relief as the Court may deem just and proper.

Dated: Newark, New Jersey
September 29, 2004

Respectfully submitted,

PROSKAUER ROSE LLP

By   /s/Edward Cerasia
   Edward Cerasia II (EC-8297)
   Elana Gilaad (EG-4212)
One Newark Center, 18th Floor
Newark, New Jersey 07102
973.274.3200

Attorneys for Defendant
Brookhaven Science Associates, LLC

**CERTIFICATE OF SERVICE**

     I hereby certify that on September 29, 2004, I caused to be served the foregoing Defendant's Memorandum of Law in Support of its Motion for Partial Judgment on the Pleadings and a Partial Stay of Discovery by ECF and Federal Express, prepaid, on the following counsel of record for plaintiffs:

        Bernard Weinreb, Esq.
        2 Executive Boulevard
        Suffern, New York 10901

                                    /s/Elana Gilaad
                                        Elana Gilaad

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PATRICE BENJAMIN and
BRENDA THOMAS,

                Plaintiffs,

      -against-

BROOKHAVEN NATIONAL LABORATORY,

                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CV-04-3345 (ADS-ARL)

Document Electronically Filed

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION FOR PARTIAL JUDGMENT ON
<u>THE PLEADINGS AND A PARTIAL STAY OF DISCOVERY</u>**

Dated: Newark, New Jersey
         September 29, 2004

Edward Cerasia II (EC-8297)
Elana Gilaad (EG-4212)
PROSKAUER ROSE LLP
One Newark Center, 18th Floor
Newark, New Jersey 07102
973.274.3200

Attorneys for Defendant
BROOKHAVEN SCIENCE ASSOCIATES, LLC